is 19-1773 WCM v. IPS Corporation. Can I just clarify, you've got two people listed. Is that because your colleague is going to do rebuttal? Correct, Your Honor. Thank you. Good morning. May it please the Court, I have three issues that I'd like to discuss with the Court today. First, being the district court's abuse of discretion in nearly troubling the damages against my client, IPS. The second being the district court's failure to abide by this court's mandate and its enhancement analysis. And third, the district court's erroneous determination to use the date of the original compensatory damages judgment as the date from which to calculate post-judgment interest on its revised enhancement analysis. Well, unfortunately for you, the questions I have don't seem to be on your list, so let me start. And can we just focus on this summary judgment issue and what happened, the limitations of willfulness? I mean, it is an argument you make, right? Correct. That the post-litigation conduct should have been excluded from the willfulness analysis, correct? That's an argument we made throughout our briefing with the district court, and one that the district court ignored, never was addressed. OK, so let me ask you a little about that argument, which is, one, I think it's clarified in red, but I think you kind of agree in gray. So my understanding from the briefing, and you can tell me if I'm wrong, is that you would agree that the sale of the classic products, even if it occurred post-litigation, would still be covered under the willfulness determination, but the revised products would not. Well, our view on the order, I would say yes in part, Your Honor. I would say the sales of the classic products pre-suit fall within the judge's willfulness and enhancement analysis. But I believe the conduct, egregious conduct stops. Just for a couple of months. Correct. But not all of the sales of the classic, exactly the same product, where the sales began before, but they just continued into the litigation. Correct, and my position on that is that, with respect to the classic product, there's no conduct that's being cited to during the course of the litigation that would be egregious. And in combination with the court's post, the ruling on post-suit willfulness as a matter of law, I believe that it's absolved IPS of egregious conduct as of the filing of the suit. And in fact, when we filed a new judgment for a matter of law, we presented remedial actions and things like that to the court. WCM argued that those were irrelevant because of that order. And the court agreed in a footnote saying that he was going to consider those actions irrelevant. I'm really confused about this point. Can you look at gray on page 5? I mean, red has a big excerpt. There's a big excerpt in red that talks about, and we can ask red, maybe I misunderstood their point. But I thought that their point is that you had conceded, and that's at the bottom of 19, top of 20. But then in gray, seemingly in response to that, you say, so while it is true that the summary judgment and other orders did not prevent the district court from being able to consider sales of the classic product after the date of commencement of the lawsuit to assess enhancement, mere sales of the classic product after the date of the suit on their own cannot possibly warrant exorbitant punishment that was levered under IPS. So this seems to say that you're saying classic products sold pre- and post-suit are fair game for enhancement, even though you obviously disagree with the judge's conclusion with respect to the stiffness of that enhancement. So I mean, taking all of this, and it caused me to go back to record, it seemed to me, so you're disagreeing with me, that if we agree with you on the import of the summary judgment, which is an open question, that we are simply talking about the post-litigation sales of the revised product. You don't agree with that. Well, I think, Your Honor, I think, I guess, the point I was trying to make is I'm not going to disagree with you on that. What I'm going to suggest is that the conduct that is cited to, there isn't any conduct cited to post-suit. So in my view, when you review the totality of the circumstances against revised, excuse me, against classic product sales post-suit, there shouldn't have been an enhancement. OK, but with respect to revised, could you have some rough number about what we're talking about in terms of the amount, the percentage, like the sales, the entirety of the sales that have been included in this? Post-suit? I believe that the revised product post-suit, what portion of the? I believe the sales of the revised classic product post-suit amount to about 40% of the sales. My recollection is that the last time you all were here, you indicated, or a record indicated, that about 15% of the units for which damages had been awarded were revised classics, just 15%. And if I remember, the number is? I'm sorry, Your Honor, I don't have that number in front of me, but I'm sure that's within the original judgment. And you were the appellant last time? We were, yes. And I think you said, undisputed evidence suggests that about 15% or about 207,597 of the units were revised classic and revised classic rough-in products at page 31 of your brief last time. Well, I'll take that as a factor. Which would mean, assuming 207,597, and there's $1.50 enhancement, we're talking about $312,000 worth of enhancement attributed to the revised classic. Correct. OK. Thank you. Assuming I've answered all your questions on the post-judgment willfulness order, what we found particularly troubling on remand is the district court's treatment of the Federal Circuit's order. In our view, the district court merely sort of played lip service to the remand instructions, particularly with respect to factors two and factor seven. With respect to factor two, this court had held that the factor only slightly favored enhancing. However, the district court, relying on the same testimony that this court discredited as supporting that contention, Mr. Casella's testimony regarding investigating whether AAB&A purchased the patents, as this court said, that testimony involved patents and products not at issue in this case, and can't support the conclusion that this factor was the most important and weighs heavily. Well, more importantly, the district court, in an effort to support its determination on factor two, cites to a snippet of testimony from Jeff Humber of IBS to conclude that the redesign was not done in an effort to avoid infringement, but only to take away WCM's perception. And in my mind, that doesn't even make sense. Why would IPS go through the efforts of revising its design if it was not for the purposes of trying to avoid the infringement claims? Do you know what the standard of review is for us? I mean, this paragraph, you're talking about the paragraph in Appendix 8, right, where the district court discusses this testimony. So that's reversible error under an abuse of discretion standard, that he chose to read this testimony in that way and to take away from it? Well, first of all, I say it's abuse of discretion because this is the same testimony that this court had said the last time was inapplicable to this review. So suppose that we thought that because of what happened during summary judgment and what was then assumed to have been taken off the table, that the revised classic is not a proper subject of enhancement. Then does the point you're now talking about  Well, the point is that the revised classic Well, the point I'm now talking about matters with respect to the classic product and viewing the classic product in the totality of the circumstances. This is the only evidence that the court cites in support of its contention that we acted, we didn't have a good faith belief. The court cites to this testimony from Mr. Casella that during the purchase of the products in question and the company, that they didn't conduct the full review of the patents. And as this court recognizes, the patents that issue in the suit did not even exist in 2010. And if you look at the court's citations, he actually omits the middle page, which ties it to the 2010 inquiry. Well, what about the line about we did this to avoid the perception? Is that, that's about the revised classic? Correct, and I find it troubling where the very next question asked that the witness was, is it to avoid infringement? And he acknowledged that that was the intent. And yet, I believe the district court was trying to suggest it was otherwise. In terms of refactor seven, this court held that the revised classic was a remedial measure. Yet, the district court on demand determined it wasn't a remedial measure. I think, again, in combination with the judge's determination and summary judgment to suggest it wasn't a remedial measure, there's no evidence to suggest we weren't intending on designing a product that didn't infringe the claims of the patent. It just certainly wouldn't make any sense. Even if the revised product was a remedial attempt, what are we to make of the fact that your client continued to sell a classic product? Well, I think what my client did was wind down the sales of the classic product, that it had an inventory. It did not, you know, when they started manufacturing the revised in July of, I believe, it was 2014, they did not manufacture any more classic products. But they had a large inventory, various sizes, various finishes, and they wound down that inventory. And then all the customers were switched over to the revised. So that doesn't excuse the infringing conduct, right? I mean, yeah, they had an inventory, but how does that answer the question about why they shouldn't be doing that? Well, Your Honor, you know, that's a lot, right? Well, what I'm saying is damages were assessed against us. We're not denying that damages shouldn't be assessed. But the question is whether that business practice is something that warrants treble damages or nearly treble damages. But I mean, on the assumption that you knew this was infringing it, how is it even an excuse at all to say, we had a lot of product, we weren't going to throw it away. We need to get a return on it. Well, I think if you accepted your assumption, it wouldn't be an excuse. But I would say I would not accept that assumption. I don't think at that point in time in the case, IPS believed that it was infringing. I think the redesign was an effort to try to further distance itself from the claims and further insulate itself from further damages. But then I thought you just said, I'm sorry. No, if you didn't think the Classic product was an infringement, why did you redesign it? I think, again, I think that was a smart business practice. You want to further get yourself away. You got to remember the revised Classic. Maybe it would have been a smarter business practice to stop selling the Classic while this was being resolved. I think then you would leave customers without an option or they'd have to go somewhere else. You might be in violation of your business contracts. I can't speak to that and it's not in the record. But I see that I'm in my rebuttal time. I just like to, unless there are other questions. How long did you continue selling the Classic on the shelf to get rid of your surplus? I believe the record reflects that it was a three and a half year sales period. This was after the suit, after the conclusion of this case. Not after the conclusion of this case, Your Honor, no. After the onset of the case. After the onset of the case, correct. I believe it was wound down by the summer following the decision by this court. OK. Thank you. Thank you. Good morning. Good morning. May it please the court. The issue in this case turns on the standard of review. It's an abuse of discretion. Can we just start where we started with your friend? Sure. Which is, at least speaking for myself, I've got some question with respect to the summary judgment that was entered into it first. And I know what your argument is. Let's assume for a moment that we conclude that the sale of revised products post litigation should not have been included in the willfulness determination. That's what the district court had said in summary judgment, right? Initially. I don't think that's exactly what the district court said on summary judgment. And all indications after that are that that's not what that means. What the court said on summary judgment, recognizing the court denied summary judgment, it wasn't granted, the court said that as to the objective prong based on the mentor case, that post litigation conduct wouldn't be looked at. The objective prong based on mentor, because we did not file for a preliminary injunction, post litigation conduct would not be considered. Now what happened since then? The jury was given the question on willful infringement as to all the products. And this court affirmed that finding of willful infringement as to the revised classic. So we're not going back to reopen willful infringement on the revised classic. That was decided. It was given to the jury, and the jury decided it. Since then, HALO overruled. Let's assume that, not the denial of summary judgment, but the paragraph that sort of, in some sense or other, grants summary judgment as to the post litigation, the one at 55, 56. Let's assume that the reasoning there is simply wrong now. It is wrong now. OK, right. And the court recognizes that. It doesn't, even the reasoning on its face, goes no further than to say there is some evidence, not that there's no tribal issue. Nevertheless, why isn't it evident that the question of willfulness, full willfulness, as to product introduced after the suit was filed, was no longer on the table for the jury to be considered, as confirmed, perhaps, by your response to the J-Mal, your opposition to J-Mal on willfulness afterwards, where you say, why are they talking about post litigation misconduct? It is immaterial, not in the case. Right. There's the jury verdict, which is just generic. It just doesn't say. It doesn't differentiate. And so willfulness was found as to the revised classic product. And this court specifically affirmed that finding, that there was willfulness as to the revised classic. That question was not open on remand. And if you look at what the district court did in addition to that, as to the products that were sold after the verdict, the intermediate period, the judge enhanced that as well. If that's inconsistent with saying nothing after the verdict could be considered for willfulness, I think it also puts the focus on the wrong issue, which is enhancement here. And there are plenty of enhancement factors after the filing of the litigation that can be considered, such as the duration of the misconduct. That's true. But we have said, even since HALO, and WVIP, and the case that begins with E or something, EK, or something like that, that we have stuck by the idea that a jury fact finding of subjective willfulness is a necessary predicate to enhancement. So if the record indicates that there simply was no jury finding of willfulness as to the revised classic, if that's true, then the rest of the factors don't matter for that. No, Judge Toronto, I would agree with you if that were the case. That's not what we have. We do have a finding of willfulness, and this Court affirming it. Perhaps I'm misreading what the Court said, but it would be. What this Court said. What page are you? Well, I have the version from Lexis, and it's on the first page or so, where it says, we conclude that WCM provided sufficient evidence for a reasonable jury to have found infringement under the doctrine of equivalence. That only relates to the revised classic. The classic was literal infringement. And to have found that IPS's infringement was willful. This very same argument was made the last time. If you look at IPS's brief on page 40, they made the exact same argument that their conduct could not be willful as to the revised classic, because it was after the litigation was filed. They made that identical argument, and this Court did not accept it. So given that there is a finding of willful infringement that was affirmed by this Court, the focus is on enhancement. And that should be an abuse of discretion standard. And I think Judge Toronto referred to this. In your J-Mall motion, you say post-litigation actions are irrelevant following the Court's ruling on summary motion for summary judgment of no willfulness. And you cite back to that and footnote 21. At that time, that's where we were. HALO hadn't been decided. The Court had said as to the objective prong that we weren't going to look at past the litigation filing, and we didn't. IPS was making the argument that, oh, look at what we did afterwards as to willful infringement. And we said, well, again, we're talking about willful infringement, not enhancement. That argument was fully vetted, and the finding of willful infringement was upheld. And as the Court recognizes, what the Court said about the objective prong back pre-HALO is no longer the law, as well as the Court's statement about we didn't file a preliminary injunction, so you wouldn't look at that conduct. And by the time we got around to enhancement, that was recognized. So we still have a willful infringement finding as to the revised classic. And in fact, I shouldn't be arguing willful infringement as to that product. The Court found that it was a trivial change. I'm not sure how that absolves anybody from willfulness. But be that as it may, the question here is just enhancement. And was 2.5 times incorrect on this record? By the way, I asked the question about putting some numbers on it. Do you have a different view of whether about 15%, 200,000 units is what we're talking about on the revised classic? I remember from the last time that was about what it was. I don't know if there was an, there must be an accounting of that number somewhere. But for purposes of this, I would accept that. That was about what it was. In which case, the enhancement for those units would be $1.50 per unit, or about $312,000. It should be around that amount, yes. It would be 15%. Just to get a sense of the scale. What we're talking about. 15% of the total, which is a little over $2 million, right? That sounds exactly right. So here, the district court, on remand, did what I believe this court instructed, and went back and looked at those factors. And there's no violation of the mandate. It was left open for the district court to consider the factors. And to take, for example, the copying factor in the court's first opinion, it had only a paragraph that mentioned the culture of copying. And this court said, that doesn't really sound like enough. But it didn't foreclose the district court from looking at actual copying. And it did that on remand. It wasn't just the culture of copying. The court found that IPS actually copied the products in this case. That's a factual finding that has not been shown to be erroneous, or an abuse of discretion in relying on it. Same for the factor two on their good faith belief. There was some discussion in the first opinion about previous products and IPS's practices. On remand, the district court went and found, as to these products, they did not have a good faith belief. And it was shown throughout the three and a half years where they continued to infringe, including selling the classic product after they had the revised classic. This is a classic abuse of discretion standard. And we don't think IPS has shown that any finding is erroneous or that the court abused its discretion in coming to this enhancement factor. Can I just ask you, do you know, when was HALO decided relative to the proceedings in this case? Was it 2016? I have my timeline right here in front of me. Yes. So the trial was in October of 2015. And then there was post-trial briefing. May of 2016 is when the court grants enhanced damages. HALO, June of 2016, which was the next month after the court's decision on enhanced damages. So summary judgment was back in 2015, around right before the trial. And HALO was decided right after that. And the court recognized that later on because it had only dealt with the objective prong that had been overruled by HALO. Yeah, the concern is, frankly, that you may be right about that. But the question remains of what everyone's understanding was as to the question that was going to the jury at the time it went to the jury. So if the understanding was we were in pre-HALO land, and in the summary judgment, the judge had really concluded that post-litigation was out, that everybody understood the question of willfulness going to the jury was limited to the pre-stuff. And so if that is the case, then yes, there may be intervening law that can still be applied subsequently. But why doesn't at least, I don't want to say these words because they're a new trial or something. I mean, if the jury never decided it because it was everyone's understanding that that question was not going to the jury on willfulness, why don't you have a little bit of a hiccup here? Do you understand the question? I do. I do completely. And I would say there was no such understanding. And the way you can determine that is, first of all, look at the jury instructions. They don't say anything about that. Look at the jury verdict, which also doesn't say anything about that. And third, on the jury verdict form was listed the 272 patent. And there was no question about that. That was introduced after the litigation was filed. And the 272 was infringed only by the revised? No, but it was after. But the judge threw that out, isn't that the judge threw out, recognizing that that wasn't before the jury because it was post-litigation. So why is it not? Again, my point being that everybody understood, as indicated by your JMAL finding, that at the time, pre-HALO, the post-litigation stuff was off the table. OK, well, first of all, I think that's broader than what anyone would have understood. Because if you look at the district court's statement on summary judgment, it relates to the objective prong. And also, it says solely conduct after the litigation. And we have taken the position throughout that conduct that began before and continued throughout can be considered for willfulness. And the revised classic, it's part of the same conduct. There really is no difference because they made what the court found was a trivial change, just to change WCM's perception. If the test for the doctrine of equivalence, an insubstantial change, I don't know how that exonerates anybody from willful infringement. Can I just, before the time runs out, the question we pressed with your friend, or I pressed with your friend, which is, is it your clear understanding that he has conceded that at most we're talking about the revised product and not the continuation of the classic product? Your Honor, I don't know whether they've conceded that. They seem to have conceded that in the last appeal. And I thought some of their statements, again, were to that effect. But from some of the portions of their brief, it looks like they were challenging the classic as to any time after the suit was filed. And that, I believe, is water under the bridge on willful infringement as to both the classic and the revised classic. And so the only issue before this court is the amount of the enhancement and whether that was an abuse of discretion. Given all that happened on summary judgment, the briefs in this case and the prior appeal, we have a finding of willful infringement as to all products that was affirmed. And so the only question is enhancement. Thank you. Thank you. May it please the Court. Joe Farquhar for the appellant IPS. Your Honor, I heard a lot of my prior colleague mention about the willfulness verdict. And I think Judge Toronto said it, which is clear that the verdict of willfulness does not supplant the judge's obligation to exercise discretion. And it has been made clear by the Supreme Court. And in fact, this court said in the prior opinion, the channel of discretion here is narrow. Some of the items that my client has raised Mr. Sylvia pointed out the Can you address Mr. Jakes's point, his argument that this issue of willfulness of the sale of the revised classic is definitively settled by this court's prior ruling in this matter? Certainly, Your Honor. I think what was done last time was that there was a motion on the appeal of a denial for judgment as a matter of law of no willfulness. It was this court's duty to find and determine if there was substantial evidence on the record to support the willfulness verdict. And that was done. But none of that evidence. But only as to the re, or not only, but including as to the revised classic. He read a statement, a sentence, right from the beginning of our opinion that says, we conclude WCM provided sufficient evidence for a reasonable jury to have found infringement under both doctrines of equivalence and to have found that IPS's infringement was willful. The doctrine of equivalence issue was only about the revised. That is correct. And do you read that second half of the sentence and to have found that IPS's infringement was willful as limited to, or at least including, or not including the revised classic? We would say the position doesn't include the revised, however. How was the matter argued? I don't remember the words. At that point, the question was, was there substantial evidence to support the verdict? There was no determination in the willfulness verdict of which product to which the willfulness applied. And it even had related to any acts related to either product. The copying, the good faith belief. In fact, we, and that's why the jurisprudence is you don't rely on the willfulness verdict. Because we don't know why the jury found how it did. And my WCM's, the biggest arrow in their quiver is that, well, we have a willfulness verdict. So therefore, from that, it springs, there's a wellspring of facts to find enhancement from which the judge can draw upon and say, well, listen. Well, if the jury found willfulness, it had to find copying. It had to find a lack of good faith belief. It had to find whatever facts that suit the matter. And the problem that we have here in that, my client, while yes, the verdict is what it is, it's been upheld. My client is not an egregious patent pirate. And let's focus for the moment on the classic products. Certainly, these patents were sprung on the client two months before they filed suit. And then they try to wind down and sell the product. But that's the only content we're talking about. There's many other companies in the United States accused of patent infringement that do the same sort of thing. Are they all wanton, reckless patent infringers? At the time in which the products were being wound down, there was summary judgement motions. There was the claim construction. Certainly. It's sort of a procedural question. Is there anything that would prevent us, as a procedural matter, don't get into the substance of this, from ruling that a new trial should be awarded subject to a remittitor of the $312,000 at issue for enhancement on just the revised? And presumably, if a new trial, we haven't talked about prejudgment interest. But on the assumption that prejudgment interest cannot run from the very beginning, but only in this case, as to what is it, 2018 or? Post-judgment interest, Your Honor. Post-judgment. Sorry. Post-judgment interest. Since March of 2019, then a new trial would push that back, push that forward even further. And Your Honor, to your question, I am not sure procedurally what would prevent you. However, we do agree that the pre-post-judgment interest, if at all, should come from the final determination enhancement. As far as this determination on summary judgment, to Your Honor, Judge Prost, the district court, whatever one's interpretation of summary judgment in counsel has tried many times to maybe navigate that, whatever anyone in the trial court thought that order meant, it's clear from Appendix 44 the district court did say, since post-litigation conduct is not an issue, cite, IDS's redesign efforts are irrelevant considerations. This was cited as footnote three. And this was the order on the J-mole of no willfulness and enhanced damages. It's hard to find the court using its best discretion, again, in that narrow line of discretion allowed to it under the enhancement inquiry, to at one point withhold from my client the ability to defend itself using a redesigned product. And then not only do that, but then try to use that redesigned product as a basis to say, we somehow were trying to conceal infringement. And then after this court's mandate that it was seen as being remedial, albeit ineffective, then to still say, you know what, I'm going to still award close to treble damages. I didn't do three because the federal circuit didn't want me to do that. So I'm going to do two and a half. But the issue is, we see there a flavor of discretion that would, I think, set a bad precedent for other litigants. In particular, where here, all that was really what we're talking about is the sale of a product that was subsequently found to infringe. That flavor is going to be a really hard abuse of discretion appeal. Well, I'm saying, though, Your Honor, here if you look at the facts in a granular level, there are a lot of facts and circumstances that we put forth in our briefs that the district court summarily just didn't consider. My WCM mentioned copying, but we put forward that the things allegedly copied were not distinct or the design or ideas of his client, although they may think it is. And certainly, our patents, we felt, were indicative of our belief that the product that was being, this classic product, was innovative and different. They don't dispute that the patent for the classic. OK, well, we're well beyond time.  If there's any other questions. Thank you. Thank you, Your Honor. All right, so the case is submitted.